# EXHIBIT 1



August 14, 2025

**Via FOIA.gov**
Centers for Medicare & Medicaid Services
Joseph Tripline
Freedom of Information Act Office
North Building, Room C5-11-06
7500 Security Boulevard
Baltimore, Maryland 21244

**FOIA Request: Records Relating to Development, Approval, and Oversight of the Increasing Organ Transplant Access Model and Health Equity Plan Requirements**

Dear FOIA Officer:

America First Legal Foundation is a national, nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, and ensure due process and equal protection for all Americans, all to promote public knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States. To that end, we file Freedom of Information Act (FOIA) requests on issues of pressing public concern, then disseminate the information we obtain, making documents broadly available to the public, scholars, and the media. Using our editorial skills, we turn raw materials into distinct work, and we distribute that work to a national audience through traditional and social media platforms. AFL's Facebook page has 267,000 followers, and our X page has 354,000 followers.

## I.    Background

On former President Joe Biden's first day in office, he signed Executive Order 13985 titled, "Advancing Racial Equity and Support for Underserved Communities," which directed the Federal Government to advance equity for all, including communities that have long been underserved, and to address what it called "systemic racism" in national policies and programs.[1]

---

[1] Exec. Order No. 86 Fed. Reg. 7009, (Jan. 21, 2021), https://perma.cc/HF9D-KCSQ.

611 Pennsylvania Ave SE #231      320 South Madison Avenue
Washington, DC 20003            Monroe, Georgia 30655

www.aflegal.org

On February 16, 2023, President Biden signed a follow-up order, "Executive Order on Further Advancing Racial Equity and Support for Underserved Communities Through the Federal Government."[2] Among other things, agencies were ordered to "prevent and remedy discrimination, including by protecting the public from algorithmic discrimination," which it defined as "instances when automated systems contribute to unjustified different treatments or impacts disfavoring people based on their actual or perceived race, color, ethnicity … or any other classification protected by law."[3] As part of the Biden Administration's broader push to embed equity into health policy, this directive signaled an intent to alter the Organ Procurement and Transplantation Network to make organ allocation decisions based, in part, on the race of the recipient rather than exclusively on medical criteria.

On May 8, 2024, the U.S. Department of Health and Human Services ("HHS"), through the Centers for Medicare and Medicaid Services ("CMS"), announced the Increasing Organ Transplant Access ("IOTA") Model.[4] Administered by CMS' Center for Medicare and Medicaid Innovation ("CMMI") in coordination with the Health Resources and Services Administration ("HRSA")—the agency responsible for overseeing the nation's organ procurement and transplantation system—the IOTA Model was described as a reform of the kidney transplant process.[5] In reality, it was conceived as a vehicle for the Biden-Harris Administration's health equity agenda, injecting race-conscious policies into the heart of federally regulated organ transplantation.

The announcement made no attempt to hide this intent. In the May 8, 2024, press release, then-HHS Secretary Xavier Becerra declared that the organ transplant industry is "not immune to racial inequities," pointing to disparities in transplant rates between Black and White Americans.[6] He pledged that the Biden administration would "take concrete steps to remove racial bias" in calculating wait times and to "root out inequity in the transplant process."[7] This was not a neutral commitment to improve patient outcomes but an explicit directive to redesign the transplant system around race and identity categories. According to the May 8, 2024, press release, the IOTA Model mirrors HRSA's own stated goals of addressing inequities in the "transplant waitlist process by reducing racial and ethnic variation both in patient referrals and in organ procurement."[8]

---

[2] Exec. Order No. 88 Fed. Reg. 10825, (Feb. 22, 2023), https://perma.cc/W3YU-MHM4.

[3] *Id.*

[4] Press Release, CTRS. FOR MEDICARE & MEDICAID SERVS., *Biden-Harris Administration Acts to Improve Access to Kidney Transplants*, (May 8, 2024), https://perma.cc/46PU-U93J.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

The IOTA Model proposed rule ("the Proposed Rule"), published May 17, 2024, in the Federal Register, made that mission clear.[9] It required every participating hospital to develop a mandatory "Health Equity Plan"—a blueprint for identifying disparities in transplant access based on race, ethnicity, or socioeconomic status, and to implement targeted strategies to close those gaps.[10] These strategies included outreach to "underserved communities," transportation subsidies, and other interventions tied to social determinants of health—factors unrelated to a parent's medical condition or clinical eligibility for a transplant.[11] Additionally, CMS introduced a direct financial incentive, called "Health Equity Performance Adjustment" ("HEPA"), worth thousands of dollars per transplant for hospitals that hit equity-related targets, effectively tying Medicare reimbursements to race-conscious outcomes.[12]

Following public feedback, CMS issued the final rule on December 4, 2024, effective July 1, 2025 ("the Final Rule").[13] While the agency dropped the HEPA and made the Health Equity Plan "voluntary," it left the rest of the discriminatory equity framework firmly in place and actively encouraged hospitals to use it.[14] "Equity" appears 232 times in the final rule. "Health equity" is referenced 180 times. "Bias" is mentioned 21 times. This is not incidental language; it is the foundation of the model.

The final rule makes clear that the IOTA Model is "intended to advance health equity by improving equitable access to the transplantation ecosystem," through "design features such as voluntary health equity plans to address health outcome disparities."[15] Under the rule, an IOTA participant may "submit a health equity plan" to CMS that will "identify health disparities within the IOTA participants' population of attributed patients" and "outline a course of action to address them."[16]

CMS selected 103 transplant hospitals[17] to participate in the six-year mandatory program, meaning they must operate under a regulatory regime that invites, normalizes, and rewards race-conscious decision-making allocation. The practical consequences are unavoidable: under IOTA, hospitals are empowered and encouraged to make life-and-death medical decisions through the lens of race and equity rather than strictly medical criteria. In a system where the supply of kidneys

---

[9] *Medicare Program; Alternative Payment Model Updates and the Increasing Organ Transplant Access (IOTA) Model*, 89 Fed. Reg. 43518 (May 17, 2024) (to be codified at 42 C.F.R. Pt. 512), https://perma.cc/8WXW-4WHP.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Medicare Program; Alternative Payment Model Updates and the Increasing Organ Transplant Access (IOTA) Model,* 89 Fed Reg 96280, (December 4, 2024) https://perma.cc/HPF6-TZ8S.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *List of Participating Transplant Hospitals*, Ctrs. for Medicare & Medicaid Servs., https://perma.cc/9YEH-SSST.

is already far smaller than the demand, this means that some patients could die waiting—not because their medical need is less urgent, but because they are not the "right" race under the Biden administration's equity metrics.

## II.    Requested Records

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552(a), AFL requests the following records from January 20, 2021, through the date this request is processed:

A. All "Health Equity Plans" or draft plans submitted to CMS by hospitals participating in the IOTA model, including drafts that did not inform agency decision-making.[18]

B. All templates, guidance, instructions, or other documents provided to IOTA participants for preparing such plans.

C. Any internal summaries, reviews, or evaluations of submitted Health Equity plans.

D. For the custodians listed below, all records referencing Executive Order 13985 or any other equity-related executive orders, White House memoranda, or administration policy initiatives in connection with the IOTA model or its equity-related provisions.

E. For the custodians listed below, all records concerning implementation of health equity provisions in the IOTA model since July 1, 2025, including any complaints, concerns, or allegations received by CMS regarding discriminatory organ allocation under the IOTA model.

F. For the custodians listed below, all records referencing or supporting the implementation of the Health Equity Performance Adjustment.

G. All records referencing or supporting the mandatory submission of "Health Equity Plans" by IOTA participants under the Proposed Rule.[19]

H. All records referencing changing the mandatory submission of "Health Equity Plans" by IOTA participants under the Proposed Rule to become voluntary under the Final Rule.[20]

---

[18] *Id.*

[19] Medicare Program; Alternative Payment Model Updates and the Increasing Organ Transplant Access (IOTA) Model, *supra* note 9.

[20] Medicare Program; Alternative Payment Model Updates and the Increasing Organ Transplant Access (IOTA) Model, *supra* note 13.

I. All records reflecting legal or policy analysis regarding the Proposed Rule and the Final Rule evaluating whether such plans could violate Title VI of the Civil Rights Act, Section 1557 of the Affordable Care Act, or constitutional equal protection requirements.

J. All records regarding the processing of this request.

Please exclude news articles, press clippings, listserv items, or forwards of the same without commentary.

For purposes of this request, the term "records" includes but is not limited to all communications (including emails, text messages, and Microsoft Teams/Slack messages), memoranda, reports, presentations, analyses, meeting notes, draft and final documents, and attachments. The term "communications" includes those with external entities, such as transplant hospitals, health systems, advocacy groups, or consultants.

## III.   Custodians

A. Dr. Mehmet Oz, Administrator
B. Chiquita Brooks-LaSure, former Administrator
C. Kim Brandt, Principal Deputy Administrator & Chief Operating Officer
D. Jonathan Blum, former Principal Deputy Administrator & Chief Operating Officer
E. Stephanie Carlton, Chief of Staff and Deputy Administrator
F. Abe Sutton, Director of CMMI and Deputy Administrator of CMS
G. Elizabeth Fowler, former Director of CMMI
H. Arrah Tabe-Bedward, Deputy Director CMMI
I. Erin Richardson, former Chief of Staff
J. Anita Pinder, former Director, Office of Equal Opportunity & Civil Rights, during its existence
K. Alaina Jenkins, former Deputy Director, Office of Equal Opportunity & Civil Rights, during its existence
L. Dr. Martin Mendoza, Director, Office of Minority Health
M. LaShawn McIver, former Director, Office of Minority Health
N. Pamela Gentry, Deputy Director, Office of Minority Health
O. Wanda Finch, former Deputy Director, Office of Minority Health
P. David Wright, Director, Quality, Safety, and Oversight Group
Q. Dora Hughes, Chief Medical Officer and Director, Center for Clinical Standards and Quality

## IV.   Processing

Processing should strictly comply with the processing guidance in the Attorney General's Memorandum on Freedom of Information Act Guidelines.[21] AFL requests expedited processing because there is an urgent need to inform the public about the implementation of the IOTA model and the role of the Biden administration's equity directives in federally funded organ transplant policy, which raises questions of significant public interest.

If you have any questions or believe further discussions regarding search and processing will facilitate more efficient production of records of interest to AFL, please do not hesitate to contact me at FOIA@aflegal.org.

## V.    Fee Waiver Request

AFL requests a waiver of all search and duplication fees associated with this request. 5 U.S.C. § 552(a)(4)(A)(iii), 31 C.F.R. § 1.7(k), 26 C.F.R. § 601.702(f)(2). The requested information specifically concerns identifiable operations and activities of the Federal Government, including how HHS, CMS, and HRSA are implementing organ allocation policies under the IOTA Model, and how those policies have been shaped by Biden's executive orders and agency initiatives on "racial equity" and "health equity."

Because it has not been made public how racial equity would be applied to the allocation of donated organs, disclosure of the requested information would contribute significantly to public's understanding of these government policies related to Americans' healthcare. These policies govern the allocation of scarce, life-saving medical resources and have direct, immediate consequences for patients on the national organ transplant waitlist. Furthermore, AFL has a demonstrated ability and intention to effectively convey the information broadly to the public, and other agencies have recognized AFL's status as a representative of the news media in granting fee waivers, including these Departments in prior requests, as well as the Departments of Defense, Education, Energy, Justice, Interior, and Homeland Security.

Finally, as a nonprofit organization, AFL has no identifiable commercial interest, and the request is made entirely to serve the public interest. We are, of course, available to provide additional information in writing or offline to support this request. If AFL's request for a fee waiver is not granted in full, please contact us immediately upon making that determination.

## VI.    Production

---

[21] Merrick Garland, *Freedom of Information Act Guidelines*, [Memorandum], Office of the Attorney General, March 15, 2022, https://perma.cc/534P-YHQV.

To accelerate the release of responsive records, AFL welcomes production on an agreed rolling basis. If possible, please provide responsive records in an electronic format by email. Alternatively, please provide responsive records in native or PDF format on a USB drive to America First Legal Foundation, 611 Pennsylvania Ave SE #231, Washington, DC 20003.

Thank you for your time and attention to this matter.


Sincerely,
/s/ Megan Redshaw
Counsel
America First Legal Foundation

# EXHIBIT
# 2

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C5-11-06
Baltimore, Maryland 21244-1850



**Office of Strategic Operations and Regulatory Affairs/Freedom of Information Group**
Refer to: Control Number 081420257037 and PIN UA2P

8/20/2025

Megan Redshaw
611 Pennsylvania Ave SE
#231
Washington, DC 20003

Dear Megan Redshaw:

I am responding to your 8/14/2025 letter requesting expedited processing of your Freedom of
Information Act (FOIA) request for documents regarding the Increasing Organ Transplant
Access Model and Health Equity Plan Requirements.  The basis for expedited processing set
forth in your letter is 'there is an urgent need to inform the public about the implementation of
the IOTA model and the role of the Biden administration's equity directives in federally funded
organ transplant policy, which raises questions of significant public interest.'

I reviewed your request in line with 5 U.S.C. §552(a)(6)(E).  This section provides for expedited
processing of FOIA requests when the person requesting the records demonstrates a compelling
need as defined by the statute; i.e., an imminent threat to the life and safety of an individual; or,
for the media, urgency to inform the public concerning actual or alleged government
activity.  On the basis of the information available to me, I find that your request does not qualify
for expedited processing based upon "compelling need."

I also reviewed your request in light of "other" circumstances that warrant expedited processing
according to this agency's <u>Federal</u> <u>Register</u> Notice Vol. 81, No. 209 (dated Friday, October 28,
2016).   Such circumstances cover the need for disclosure of the specific records in question
because the requester must meet: a <u>deadline</u> in litigation, either in court or before an
administrative tribunal; or a <u>deadline</u> imposed by a governmental agency for commenting on a
proposed regulation.  I find that none of these circumstances apply here.

Finally, in line with the provision of our <u>Federal Register</u> Notice that requires consideration of all
requests that do not fall within the circumstances enumerated therein, I have considered the
situation set forth in your letter.  Unfortunately, I cannot conclude from the information you have
provided that there is "exceptional need or urgency" justifying expedited processing in this case.

Therefore, I cannot grant your request for expedited processing.  This Group will process your
request in accordance with this agency's "first in, first out" practice.

If you disagree with this decision, you may appeal.  Any such appeal must be mailed within 30 days to: Chief Operating Officer & Deputy Administrator, Centers for Medicare & Medicaid Services, Mail Stop DO-01-60, 7500 Security Boulevard, Baltimore, Maryland 21244.  Mark your envelope "Freedom of Information Act Appeal" and enclose a copy of this letter with your appeal.

Questions concerning the status of your request should be directed to Jennifer Watson of my staff at jennifer.watson1@cms.hhs.gov.

Sincerely yours,

*Desiree Gaynor*

Desiree Gaynor
Director, Division of FOIA Analysis – A
Freedom of Information Group

# EXHIBIT
# 3



**AMERICA FIRST LEGAL**

September 2, 2025

**Via Mail & Email**: jennifer.watson1@cms.hhs.gov

Chief Operating Officer & Deputy Administrator
Centers for Medicare & Medicaid Services
Mail Stop DO-01-60
7500 Security Boulevard
Baltimore, Maryland 21244

**Re: Appeal of Denial of Expedited Processing for Freedom of Information
Act No. 081420257037 (PIN UA2P)**

To whom it may concern:

America First Legal Foundation ("AFL") writes to appeal the Centers for Medicare &
Medicaid Services' ("CMS") denial of expedited processing with respect to AFL's
Freedom of Information Act ("FOIA") request, No. 081420257037 (PIN UA2P).[1]
Expedited processing is warranted because (1) failure to provide the requested
records expeditiously could reasonably be expected to pose an imminent threat to the
life or physical safety of individuals, and (2) there is an urgent need to inform the
public concerning actual or alleged Federal Government activity.

## I.      Background

On August 14, 2025, AFL submitted a FOIA request seeking records concerning the
development, approval, and oversight of the Increasing Organ Transplant Access
("IOTA") Model and its associated health equity plan directives.[2]

On August 20, 2025, CMS denied AFL's request for expedited processing on the
grounds that AFL failed to demonstrate a "compelling need" as defined by 5 U.S.C. §
552(a)(6)(E), specifically an "imminent threat to the life and safety of an individual;"
or, for the media, an "urgency to inform the public concerning actual or alleged
government activity."[3] CMS further stated that it could not conclude from the

---

[1] Exhibit 1.
[2] *Id.*
[3] Exhibit 2.

611 Pennsylvania Ave SE #231        320 South Madison Avenue
Washington, DC 20003                Monroe, Georgia 30655

www.aflegal.org

information provided that there was an "exceptional need for urgency" justifying expedited processing.[4]

For the reasons set forth below, CMS's determination was erroneous, and AFL respectfully requests reversal of that denial and an immediate grant of expedited processing for its FOIA request.

## II.    Standard of Review

The FOIA requires expedited processing when a requester demonstrates a "compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need," is established when "a failure to obtain requested records on an expedited basis … could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;" or when the request is "made by a person primarily engaged in disseminating information," there is "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(I)–(II). The Department of Health and Human Services' regulations for evaluating requests for expedited processing mirror these standards. *See* 45 C.F.R. § 5.27(b).

## III.    Argument

### A. *AFL is Primarily Engaged in Disseminating Information, and There is an Urgency to Inform the Public About Actual or Alleged Federal Government Activity*

AFL is a national, nonprofit organization dedicated to promoting the rule of law, preventing government overreach, and ensuring due process and equal protection for all Americans. To achieve its goals, AFL regularly files FOIA requests on issues of pressing public concern, applies editorial judgment to transform those records into distinct work, and disseminates the obtained information broadly to the public, scholars, and the media through traditional and social media platforms.

In its original FOIA request, AFL explained that it seeks these records to "promote public knowledge and understanding of the law and individual rights guaranteed under the Constitution and laws of the United States." CMS acknowledged AFL's role in disseminating information by categorizing the request under the "news media" fee category, yet it erroneously overlooked this status in denying expedited processing.

AFL qualifies as a "person primarily engaged in disseminating information" under 5 U.S.C. § 552(a)(6)(E)(v)(II), and other agencies have repeatedly granted AFL expedited processing and fee waivers on this basis. Courts have made clear that dissemination need only be a principal activity, not the requester's exclusive activity.[5]

---

[4] *Id.*

[5] *Protect Democracy Project Inc., v. United States Dep't of Just.*, 498 F.Supp.3d 132, 139 (D.D.C. 2020).

That principle applies squarely here, where AFL routinely publishes documents and analyses of federal programs for public consumption. Even CMS's denial of expedited processing did not contest whether AFL is an organization "primarily engaged in disseminating information," thereby treating the point as conceded.

### B. AFL's FOIA Request Clearly Concerns Actual or Alleged Federal Government Activity

The records sought by AFL in this case concern "actual or alleged Federal Government activity." AFL's request seeks information about CMS's development, approval, and implementation of the IOTA Model, including its directives that hospitals create "health equity plans." This Model is not hypothetical rulemaking—it currently governs kidney allocation decisions in real time at more than 100 hospitals.[6] Therefore, there can be no reasonable dispute regarding whether the standard under 5 U.S.C. 552(a)(6)(E)(v) is met.

### C. There is an Urgency to Inform the Public About the Way IOTA Has Been Implemented and its Effects on Kidney Procurement and Allocation

Whether CMS is permitting or encouraging federally funded hospitals to use race, sex, or other protected characteristics in deciding who receives a life-saving organ is a matter of urgent and immediate public concern. Indeed, the organ transplant system is currently facing intense media and investigative scrutiny in the wake of recent scandals,[7] and "one need look no further than the widespread media attention" paid to the subject to see the urgency.[8]

Additionally, the IOTA Model incorporates the Biden Administration's equity directives issued under Executive Order 13985,[9] which were rescinded by President Trump's Executive Orders 14148,[10] 14151,[11] and 14173.[12] The public, therefore, has a compelling interest in knowing whether CMS continues to implement race- or sex-based discrimination in organ allocation in defiance of those recissions and the law. Delaying disclosure frustrates accountability and undermines public confidence in the transplant system. There is also a clear urgency to expose potential wrongdoing

---

[6] *List of Participating Transplant Hospitals,* CTRS. FOR MEDICARE & MEDICAID SERVS., https://perma.cc/9YEH-SSST.

[7] Press Release, U.S. Dep't of Health & Hum. Servs., HHS Finds Systemic Disregard for Sanctity of Life in Organ Transplant System (July 21, 2025), https://perma.cc/2J37-Z2VU.

[8] *See Protect Democracy Project Inc. v. Dep't of Def.*, 263 F.Supp.3d 293, 299 (D.D.C. 2017); *see also* Brian M. Rosenthal, *U.S. Government Cracks Down on Organ Transplant System*, N.Y. TIMES, https://perma.cc/VN8A-XS55.

[9] Exec. Order No. 13985, 86 Fed. Reg. 7009 (Jan. 25, 2021) https://perma.cc/DKM5-XMEV.

[10] Exec. Order No. 14148, 90 Fed. Reg. 8237 (Jan. 28, 2025) https://perma.cc/28DP-5HPU.

[11] Exec. Order No. 14151, 90 Fed. Reg. 8339 (Jan. 29, 2025) https://perma.cc/4XZP-KB4S.

[12] Exec. Order No. 14173, 90 Fed. Reg. 8633 (Jan. 31, 2025), https://perma.cc/8ASH-GVED.

# EXHIBIT 4

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C5-11-06
Baltimore, Maryland 21244-1850



**Office of Strategic Operations and Regulatory Affairs/Freedom of Information Group**
Refer to:  Control Number 081420257037 and PIN UA2P

9/3/2025

Megan Redshaw
611 Pennsylvania Ave SE
#231
Washington, DC 20003

Dear Megan Redshaw:

I am acknowledging receipt of your 9/2/2025, Freedom of Information Act (FOIA) appeal that
you sent to the Chief Operating Officer & Deputy Administrator, Centers for Medicare &
Medicaid Services (CMS).  We will process your appeal as expeditiously as possible, consistent
with Department of Health and Human Services FOIA rules set forth at 45 CFR Part 5.

Questions regarding your appeal should be directed to Desiree Gaynor at
desiree.gaynor@cms.hhs.gov, or 410-786-5353, if you have any concerns.

Sincerely,

Joseph Tripline
CMS FOIA Officer
Deputy Director
Freedom of Information Group